# Applicability of Post-Employment Restrictions on Dealing with Government to Former Employees of the Government Printing Office

The Government Printing Office (GPO) is neither a part of the Executive Branch nor an independent agency of the United States for purposes of restrictions on post-employment activities of certain government officers and employees set forth in 18 U.S.C. § 207. Rather, GPO is a unit of the Legislative Branch. Accordingly, officers and employees of GPO are not subject to the post-employment restrictions of 18 U.S.C. § 207.

Special employees of the GPO are also excluded from coverage of the post-employment restrictions, although special employees of the Executive Branch would be covered. Because restrictions of § 207 do not apply to regular officers and employees of the Legislative Branch, it is extremely doubtful that Congress intended them to apply to special employees of that branch.

February 26, 1985

MEMORANDUM OPINION FOR THE INSPECTOR GENERAL,
GOVERNMENT PRINTING OFFICE

This responds to your request for our opinion whether 18 U.S.C. § 207, which restricts the post-employment activities of government officers and employees within its coverage, applies to former employees of the Government Printing Office (GPO).[1] Specifically, you asked us to consider whether the GPO is an "independent agency of the United States" for purposes of 18 U.S.C. §§ 207 and 208.[2] In an informal letter to the General Counsel of GPO, the Office of Government Ethics (OGE) addressed this same question in 1982. OGE concluded that § 207 does not apply to former GPO employees because the GPO is a part of the Legislative Branch and the Legislative Branch is not subject to § 207. After reviewing the legislative history and the laws governing the GPO, we conclude that GPO is not an "independent agency of the United States" for purposes of §§ 207 and 208. Therefore, for the reasons discussed below, we agree with OGE that 18 U.S.C. § 207 does not apply to employees of the GPO.

---

[1] Section 207 is the criminal conflict of interest statute governing post-employment activities of government employees. In broad terms, it prohibits former employees from undertaking representational activities before federal agencies, on behalf of someone other than the government, with respect to matters in which the former employee participated personally and substantially while in government service (a lifetime ban) or that fell under the employee's official responsibility in the last year of government service (a two-year ban). For certain senior-level employees, § 207 also establishes a one-year ban on representational activities before the employee's former agency or certain components of that agency. Section 207 is supplemented by extensive regulations issued by the Office of Government Ethics. See 5 C.F.R. Part 737.

[2] 18 U.S.C. § 209 also applies to officers and employees of an "independent agency of the United States."

55

By its terms, § 207 applies to any person who has been "an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia." In contrast, other conflict of interest provisions expressly apply to officers and employees in the Executive, Legislative and Judicial Branches. *See, e.g.*, 18 U.S.C. §§ 203, 205. We are not aware of any discussion in the legislative history of the revision of the conflict of interest laws in 1962 or the amendments made to § 207 by the Ethics in Government Act of 1978, Pub. L. No. 95–521, 92 Stat. 1864, regarding the specific application of § 207 or the other conflict of interest laws to the GPO.[3] However, the legislative history of Title V of the Ethics in Government Act indicates unequivocally that Congress intended § 207 to restrict the post-employment activities of officers and employees of the Executive Branch (as well as the District of Columbia and the independent agencies), *see* S. Rep. No. 170, 95th Cong., 1st Sess. 31, 47, 151 (1977), *reprinted in* 1978 U.S.C.C.A.N. 4216, 4247, 4263, 4367; H.R. Conf. Rep. No. 1756, 95th Cong., 2d Sess. 73 (1978), *reprinted in* 1978 U.S.C.C.A.N. 4381, 4389, but not the post-employment activities of employees of the Legislative or Judicial Branches, *see* S. Rep. No. 170 at 151, 1978 U.S.C.C.A.N. at 4367 ("Officers and employees of the Legislative and Judicial Branch of the Government are not covered by this Title.").

Moreover, this Office previously has interpreted the post-employment prohibitions in § 207 to apply solely to officers and employees in the Executive Branch. *See* Memorandum to Honorable William E. Casselman II, Legal Counsel to the Vice President, from Robert G. Dixon, Jr., Assistant Attorney General, Office of Legal Counsel (June 13, 1974) (18 U.S.C. §§ 207–209 apply solely to employees in the Executive Branch); Letter to Charles E. Blake from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel (Apr. 8, 1974) (§ 207 applies only to Executive Branch officers and employees and does not restrict post-employment activities of former legislative employees); *cf.* "Conflict of Interest — 18 U.S.C. § 207 — Applicability to the General Accounting Office," 3 Op. O.L.C. 433 (1979) (§ 207 applies to General Accounting Office because of the unique statutory definitions regarding the GAO). Accordingly, we examine whether the GPO is an independent agency or part of the Legislative Branch for purposes of § 207.

The GPO was created in 1860, J. Res. of June 23, 1860, 12 Stat. 117, after extensive debate over the relative merits of a contract system of public printing versus the establishment of a GPO. At that time, the government employed a tariff system, or fixed price schedule. The contract system had been tried in the past but had been rejected because it was fraught with partisan abuses, particu-

---

[3] The introductory phrase in § 207(a) (as amended by Title V of the Ethics in Government Act), which describes the former officers and employees to whom § 207 applies, is identical to the introductory phrase in § 207 as first enacted in 1962. The House report on the 1962 law describes § 207(a) (and §§ 208 and 209) as applying to officers and employees of the "executive branch" or an "independent agency," without further elaboration. *See, e.g.*, H.R. Rep. No. 748, 87th Cong., 1st Sess. 11, 12, 13, 23, 24 (1961). The Senate report describes §§ 207, 208 and 209 as applying to present and former government employees only in very general terms. *See* S. Rep. No. 2213, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3852.

larly with regard to the printing for the executive departments. Congress saw the ability to have its own materials printed more expeditiously and less expensively as a primary advantage of a Government Printing Office. *See generally* H.R. Rep. No. 249, 36th Cong., 1st Sess. (1860); Cong. Globe, 36th Cong., 1st Sess. 2478, 2482–87, 2489, 2500–05, 2507, 2511–13 (1860) (House debate); *id.* at 3057–62 (1860) (Senate debate).

Courts have described the GPO as a "legislative unit performing a support function for Congress." *Lewis* v. *Sawyer*, 698 F.2d 1261, 1262 n.2 (D.C. Cir. 1983) (Wald, J., concurring). Its "prime function is to support Congress by publishing for distribution legislative journals, bills, resolutions, laws, reports, and numerous other documents; this type of 'informative' activity, 'operating merely in aid of congressional authority to legislate,' fits a 'category of powers' that the Supreme Court considered within Congress' dominion." *Id.* at 1262 (quoting *Buckley* v. *Valeo*, 424 U.S. 1, 137–43 (1976) (per curiam)); *see also Thompson* v. *Sawyer*, 678 F.2d 257, 264 (D.C. Cir. 1982); *Hentoff* v. *Ichord*, 318 F. Supp. 1175, 1180 n.3 (D.D.C. 1970); *United States* v. *Allison*, 91 U.S. 303, 307 (1875). The Comptroller General has also recognized that, as a general matter, the GPO is within the Legislative Branch of government. 36 Comp. Gen. 163, 165 (1956); 29 Comp. Gen. 388, 390 (1950).

The Congressional Joint Committee on Printing (JCP) retains supervisory control over a host of GPO's functions. *See, e.g.*, 44 U.S.C. § 103 (power to remedy neglect, delay, duplication, and waste); *id.* § 305 (approval of GPO employees' pay);[4] *id.* § 309 (revolving fund available for expenses authorized in writing by the JCP); *id.* § 312 (requisitioning of materials and machinery with approval of the JCP); *id.* § 313 (examining board consisting of GPO personnel and a person designated by the JCP); *id.* § 502 (approval of contract work); *id.* § 505 (regulation of sale of duplicate plates); *id.* §§ 509–517 (approval of paper contracts); *id.* § 1914 (approval of measures taken by the Public Printer to implement the depository library program); *see also Lewis* v. *Sawyer*, 698 F.2d at 1263. This relationship to Congress appears to preclude a conclusion, either in fact or as a constitutional matter, *see INS* v. *Chadha*, 462 U.S. 919 (1983), that the GPO is not an arm of Congress.

The appointment of the Public Printer by the President with the advice and consent of the Senate, *see* 44 U.S.C. § 301, is not inconsistent with a conclusion that the GPO is a Legislative Branch unit. The President's appointment power under Article II of the Constitution is not limited to the Executive Branch. For example, the President appoints federal judges and also a number of legislative officers, such as the Comptroller General, the Librarian of Congress, and the Architect of the Capitol.

In a 1979 opinion, this Office concluded that the General Accounting Office (GAO) is an "independent agency" within the meaning of 18 U.S.C. § 6 and is therefore subject to § 207, even though it is generally considered to be part of the Legislative Branch. *See* 3 Op. O.L.C. 433 (1979). This conclusion resulted

---

[4] Although GPO employees hold positions in the competitive service, they are not covered by the civil service classification scheme. *See* 5 U.S.C. § 5102(c)(9); *Thompson*, 678 F.2d at 264.

from the unique statutory definitions regarding the GAO. The term "agency" as used in § 207 includes "any department, *independent establishment*, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense. 18 U.S.C. § 6 (emphasis added).[5] Significantly, unlike the GPO, the GAO is specifically defined as an "independent establishment" for purposes of Title V of the Ethics in Government Act. *See* 5 U.S.C. § 104.

Other language in our 1979 opinion concerning the GAO suggests that a determination that an entity is in the "Legislative" Branch is not dispositive of whether or not its officers and employees are subject to the conflict of interest provisions set forth at 18 U.S.C. §§ 207, 208 and 209. *See* 3 Op. O.L.C. at 435–36. When read in context, however, that language serves merely as a gloss on our conclusion that the GAO is an "independent agency" under § 207 by statutory definition, a conclusion we are unable to reach with respect to the GPO.[6]

In your request, you note that the definition of "special Government employee" in 18 U.S.C. § 202, for purposes of §§ 203, 205, 207, 208, and 209, includes officers and employees of the Legislative Branch. The legislative history of the conflict of interest laws reveals that Congress intended to create a category of special government employees for whom the restraints upon regular government employees would be relaxed. This category would permit the government, primarily the Executive Branch, to bring in part-time or intermittent advisers and consultants with less difficulty. *See* H.R. Rep. No. 748, 87th Cong., 1st Sess. 4–5 (1961); S. Rep. No. 2213, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3852, 3854–56, 3864 (views of Sen. John A. Carroll). The House bill did not make employees of the Legislative Branch eligible for classification as special government employees. *See* H.R. Rep. No. 748, 87th Cong., 1st Sess. 13–14 (1961). The Senate saw no reason for omitting them and amended the definition of special government employee accordingly. *See* S. Rep. No. 2213, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3852, 3857.

As you have pointed out, § 207 does apply to special government employees. We believe, however, that it would be inconsistent with the legislative purpose of minimizing the obstacles faced by an agency requiring the part-time or temporary services of advisers and consultants to construe § 207(a) and (b) as applying to special government employees in the Legislative Branch, given that that section does not apply to regular Legislative Branch employees. We

---

[5] Although this expansive definition would appear to include all governmental entities, the legislative history of § 207 makes clear that for purposes of that section, the statutory definition of "agency" does not include Legislative Branch agencies such as the GPO.

[6] The Government Printing Office Standards of Conduct, which are not published in the *Code of Federal Regulations*, state (at Part 6) that 18 U.S.C. §§ 207–209 relate to the ethical conduct of GPO employees. Government Printing Office, Instruction 655.3 (Feb. 23, 1973). We have not been asked and do not reach the question whether those provisions of the GPO Standards of Conduct are invalid in light of our conclusion that §§ 207–209 do not apply to the GPO.

doubt that Congress could have intended such an incongruous result. Rather, we construe the definition of "special Government employee" in 18 U.S.C. § 202 as not changing the scope of coverage of any of the substantive sections. Therefore, we believe that those conflict of interest provisions that apply to special government employees apply only to those special government employees in the branch or branches of government within the coverage of the particular substantive section. *Compare* 18 U.S.C. §§ 203, 205 *with id.* §§ 207–209.

For the reasons set forth above, we conclude that 18 U.S.C. § 207 does not apply to officers and employees of the GPO, an entity within the Legislative Branch of government.

RALPH W. TARR
*Acting Assistant Attorney General*
*Office of Legal Counsel*